[Civ. No. 1127. Third Appellate District.—November 25, 1913.]

## WILLIAM A. WATERMAN, Respondent, v. VISALIA ELECTRIC RAILROAD COMPANY, Appellant.

ELECTRIC RAILWAY—CAR STRIKING CHILD ON TRACK—ABILITY OF MOTORMAN TO AVOID ACCIDENT.—In this action against a railway company for the death of a child who wandered on the track and was there struck by an electric car, it cannot be said that the jury was not justified in adopting the theory that the motorman saw, or by the exercise of ordinary care could have seen, the child in time to avoid the accident.

ID.—NEGLIGENCE OF MOTHER OF CHILD—QUESTION FOR JURY.—Whether the mother of the child was guilty of contributory negligence in allowing it to be out of her sight fifteen minutes and wandering on the railway track, during which time she was busy with her household duties, is a debatable question and concluded by the finding of the jury; the jury was not bound to find that contributory negligence must be imputed to her.

ID.—FAILURE OF MOTORMAN TO SEE CHILD — GROSS NEGLIGENCE.—If through carelessness the motorman failed to observe the perilous position of the child in time to prevent the injury, he was properly chargeable with gross negligence.

ID.—LAST CLEAR CHANCE—NECESSITY OF ACTUAL KNOWLEDGE OF DANGER.—Liability under the doctrine of last clear chance is based on the fact that the defendant actually knew of the danger, not on the

theory that he should, or by the exercise of ordinary care could, have discovered the peril. Hence it was error to instruct the jury that, while they believed the mother of the child to be chargeable with contributory negligence, they would still be justified in finding a verdict for the plaintiff if it was believed that the motorman, by the exercise of ordinary care, could have seen the child in time to avoid the accident.

ID.—DEFECTIVE BRAKES — INSTRUCTIONS ELIMINATING CONTRIBUTORY NEGLIGENCE.—If the plaintiff based the action on the negligence of the defendant in not equipping the car with suitable brakes, as well as on the carelessness of the motorman, it was error to so instruct the jury as to justify a verdict for the plaintiff on the theory that with suitable brakes the accident might have been prevented, since the doctrine of contributory negligence was thereby nullified.

ID.—EVIDENCE AS TO CONDITION OF BRAKES—INSTRUCTIONS.—The only reasonable inference from the evidence is that the brakes worked properly. Therefore the court should have given this instruction proposed by the defendant: "I instruct you that there is no evidence in this case to the effect that the brakes in defendant's car were inadequate or that defendant was negligent in respect to the braking equipment of said car or the condition thereof."

APPEAL from a judgment of the Superior Court of Tulare County and from an order refusing a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, Powers & McFadzean, and W. R. Millar, for Appellant.

Lamberson & Lamberson, and J. M. Burke, for Respondent.

BURNETT, J.—The appeal is from a judgment in favor of plaintiff and from an order denying the motion of defendant for a new trial in the action by the father to recover damages for the loss of earnings of an infant son who was killed by an electric car operated by servants of the defendant corporation. The complaint alleged that the death of the child was caused by the negligence, wantonness, and willfulness of the servants of defendant and that the defendant neglected to equip the car with proper or adequate brakes and that "said defendant carelessly and negligently permitted said car to become and remain out of repair in that

the brakes thereon had become weakened and unserviceable so that said car could not be stopped with reasonable certainty or celerity." The material allegations of the complaint were put in issue by the answer, and contributory negligence was also set up.

The contentions of appellant may be reduced to three: 1. The verdict is not supported by the evidence; 2. The court misdirected the jury to the prejudice of appellant; and, 3. The court erred in refusing certain instructions requested by defendant.

As to the first of these it is insisted that there was no substantial showing of negligence on the part of those in charge of the car. It appears that the accident occurred approximately on the crossing at the intersection of B and Walnut streets in Exeter, a town of probably a thousand inhabitants. The tracks are on Walnut Street, running east and west, and the car approached the crossing from the east. B Street extends north and south and the Waterman house was a short distance and north from Walnut Street and on the east side of B Street. There is a curve in the track a little less than four hundred feet from the crossing. At the time of the accident the car was traveling at the rate of about twenty miles an hour. It is the claim of appellant that, being uncontradicted, the following testimony of the motorman must be accepted as true: "As I proceeded down the road and toward Exeter, I saw a little child. As near as I could determine his location was at the west side of the crossing. He was on the track. When I first saw him I was about 150 feet from him, I should judge. When I first saw it it was just getting up on its hands and knees." He further testified that the sun was "right in my eyes" and "I then put on my brakes as quickly as I could, whistled and kept whistling. Besides that I reversed my car. The brakes that I threw on were the emergency brakes. That was done as soon as I discovered that there was a child there." From this, it is argued that the only reasonable inference is that the motorman, upon seeing the child, did everything possible to stop the car and that he used ordinary care in detecting the child's presence on the track.

On the other hand, respondent calls attention to the fact that the motorman had a full opportunity to see the child

when the car came upon the straight track but nevertheless the car traveled the four hundred feet east of the crossing and went on nearly two hundred feet west of the crossing before coming to a stop after striking the child. While the motorman, it is true, claims that the sun was "in his eyes," he nowhere asserts that this fact actually prevented him from seeing the child. Indeed, in one part of his testimony he states: "Before I got off the curve I could see the track down to where the child was." At the coroner's inquest, also, he said he was just coming on the straight track when he first saw the boy. He afterward modified this statement by saying that he was not sure that it was just when he was coming on to the straight track, and further on in the examination, that he was about two hundred feet from the crossing; but, in view of his inconsistent statements, we cannot say that the jury was not justified in adopting the theory that he did see, or by the exercise of ordinary care could have seen, the child in time to avoid the accident, the evidence showing that it required about three hundred feet in which to stop the car when it was running at the rate of twenty miles per hour. If through carelessness he failed to observe the perilous position of the child in time to prevent the injury, of course, it would follow that the motorman was properly chargeable with gross negligence.

Neither can it be said, we think, that the jury was bound to find that contributory negligence must be imputed to the mother for permitting the child to wander upon the track. The accident occurred about six o'clock P. M. and the child had been out of doors about half an hour. The mother was busy with her household duties but during this time she made frequent trips to the door to watch the child, going four or five times. She said: "I kept watch on the baby" and she saw him not more than fifteen minutes before he was killed and at that time he was by the steps with the oldest boy, who was nine years of age. The question of the mother's negligence, under the circumstances, we regard as debatable and, therefore, concluded by the finding of the jury. The following quotation from *Fox* v. *Oakland Consolidated Street Ry. Co.* 118 Cal. 55, [62 Am. St. Rep. 216, 50 Pac. 25], we consider applicable here: "Parents are chargeable with the exercise of ordinary care in the protection of their minor

children; and whether the conduct of the mother, for which plaintiff is to be held responsible, in permitting the deceased child to be out of her sight for a period of from fifteen to twenty minutes, without satisfying herself of his whereabouts, was, under all the circumstances, a want of ordinary care, was, we think, a fairly debatable question. (*Schierhold* v. *North Beach etc. R. R. Co.*, 40 Cal. 447; *Meeks* v. *Southern Pac. R. R. Co.*, 56 Cal. 513, [38 Am. Rep. 67]; *Brickett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504, [18 N. E. 108].) ''

But respondent contends that, regardless of the question of contributory negligence, there was sufficient evidence to justify the verdict upon the theory that defendant had a clear opportunity, by the exercise of ordinary care, to avoid the accident. It is insisted that the doctrine is correctly declared in the Fox case, where it is said: ''But were defendant's contention sustainable in this respect (as to contributory negligence) it would not necessarily determine the plaintiff's right to recover. There was evidence tending to show that when the child went upon the railroad track he was a sufficient distance in advance of the approaching car to have enabled those in charge thereof, by the exercise of ordinary care, to have stopped before striking him. This evidence, if believed by the jury, and their verdict implies that it was would tend to show a gross negligence on the part of defendant's servants, and justify a finding for plaintiff notwithstanding the negligence of the parents in permitting the child to be in the street. This is upon the principle, now firmly established in this state, that a party having an opportunity by the exercise of proper care to avoid injuring another must do so, notwithstanding the latter has placed himself in the situation of danger by his own negligence or wrong.'' (Citing cases.)

This quotation suggests one of the most important questions involved herein and which has received careful attention from counsel. By respondent it is contended that, under the peculiar circumstances, if the motorman saw or by the exercise of ordinary care could have seen, the child on the track in time to avoid the injury, we have a case for the application of what is known to the profession as ''the last clear chance'' principle. Appellant contends that it can be invoked only when the servant has *actual knowledge* of the

dangerous situation. The matter is important for the reason that the court adopted respondent's view and gave to the jury this instruction: "But should you find that defendant was guilty of some negligence, and should you further find from the evidence that the negligence of defendant contributed directly or proximately to the death of said child, and should you further find from the evidence that the said child or his father or the person or persons charged with the care and control of said child at the time were also guilty of negligence which contributed directly or proximately with the negligence of defendant to his death, then I instruct you that your verdict must still be in favor of defendant, unless you also find that notwithstanding plaintiff's negligence defendant could with reasonable care have avoided injuring said child." And also: "If said child was killed through the mutual fault of himself or those having the care and control of him at the time of the accident and of the servants or agents of the defendant company, directly or proximately contributing thereto, then your verdict must be for the defendant, unless it appears that injury to the child could have been avoided by the exercise of reasonable diligence on the part of defendant."

It is apparent that, under these instructions, the jury, believing that the mother of the child was chargeable with contributory negligence, would still be justified in finding a verdict for plaintiff if it was believed that the motorman, by the exercise of ordinary care, could have seen the child in time to avoid the accident, and it may be that the verdict was based upon that theory.

Many cases from other jurisdictions and some from our own state and various text books are cited by respondent in favor of his contention. They have been examined and, it must be said they lend support to his position, but the question has been set at rest in this state by the recent decisions of the supreme court of which it will only be necessary to refer to the case of *Thompson* v. *Los Angeles and San Diego Beach Railway Co.*, 165 Cal. 748, [134 Pac. 709]. The lower court in that case gave the following instruction: "I instruct you that one having knowledge of the dangerous situation of another, and having a clear opportunity by the exercise of proper care to avoid injuring another, must do so, not-

withstanding the latter has placed himself in such situation of danger. by his own negligence. If therefore you should find from the evidence that the motorman of defendant's car which collided with the automobile, saw *or by the exercise of reasonable care and prudence should have seen the situation in which plaintiff was before the collision,* and had the opportunity by the exercise of proper care to avoid the collision and avoid injuring the plaintiff and failed to exercise such care or to do what reasonable prudence would dictate he should have done to avoid injuring the plaintiff, the defendant is liable and your verdict must be for the plaintiff.''

In passing upon the correctness of this, the supreme court, through Mr. Justice Sloss, said: ''This instruction is manifestly erroneous, in so far as it attempts to apply the last clear chance doctrine to a defendant who is not actually aware of the fact that plaintiff has negligently put himself in a position of danger. The italicized portion of the quotation declares a proposition that has been repeatedly repudiated by the decisions of this court. In *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, [53 Pac. 651], the court said that the liability under the doctrine in question 'is based upon the fact that defendant did actually know of the danger—not upon the proposition that he would have discovered the peril of the plaintiff but for remissness on his part. Under this rule a defendant is not liable because he ought to have known'. The same views are expressed in *Wahlgren* v. *Market St. Ry. Co.,* 132 Cal. 656, [62 Pac. 308, 64 Pac. 993], and *Bennichsen* v. *Market St. Ry. Co.,* 149 Cal. 18, [84 Pac. 420]. (See, also, *Esrey* v. *Southern Pacific Co.,* 103 Cal. 541, [37 Pac. 500]).'' The same rule was recognized by this court in *Zipperlen* v. *Southern Pacific Co.,* 7 Cal. App. 206, [93 Pac. 1049].)

But there is another objection to the instruction which we regard as insuperable.

Plaintiff, as we have seen, based his cause of action upon the negligence of defendant in furnishing defective brakes as well as upon the said carelessness and indifference of the motorman, and in the brief here respondent argues that the verdict may be sustained upon either ground. We must assume that the same argument was made to the jury, and

they may have adopted the theory that the negligence of defendant consisted in its failure "to equip the said car with proper or adequate brakes." Having taken this position, the jury may have concluded that if the car had been properly equipped with brakes it would have been stopped in time and the accident avoided. They would then apply said instruction to that contingency and necessarily reach the conclusion that though the child's mother was guilty of negligence that contributed directly to the injury, yet, since defendant, if it had furnished suitable brakes, might have avoided the accident, plaintiff was entitled to recover. This would be, of course, to set at naught and completely nullify the doctrine of contributory negligence. It would be in effect that the prior negligence of defendant, if contributing to the accident, would render defendant liable notwithstanding the succeeding negligence of plaintiff which contributed directly and proximately to the injury. In other words, contributory negligence would be entirely eliminated from the case. We cannot say that the jury did not make this erroneous and prejudicial application of said instruction, although we do not agree with respondent that the verdict can be justified on the ground of defective brakes. As we read the record, the evidence all shows that there was no negligence in that respect. There is much positive testimony similar to that of the witness, Robert N. Richardson, who declared: "I inspected that car that morning before it went out, and it was in good condition. The brakes were all right. I inspected that same car again the next morning and I found the brakes in good condition." There is no evidence to the contrary and the only reasonable inference is that the brakes worked properly but, unfortunately, they were not operated in time.

We think, therefore, that the court should have given this instruction proposed by defendant: "I instruct you that there is no evidence in this case to the effect that the brakes in defendant's car were inadequate or that defendant was negligent in respect to the braking equipment of said car or the condition thereof."

We find no other error in the record.

As to the amount of the verdict, we feel satisfied it is not excessive.

But, for the reasons stated, we are satisfied the defendant is entitled to a new trial and the judgment and order are therefore, reversed.

Chipman, P. J., and Hart, J., concurred.